IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      Respondent/Plaintiff,

    v.                             Crim  No. 09-40061-01-SAC
                                   Civil No.   11-CV-4178-SAC

PASCUAL VAZQUEZ-VILLA,

      Movant/Defendant.

**MEMORANDUM AND ORDER**

Following a six-day jury trial, the jury found Defendant Pascual Vazquez-Villa guilty on 13 counts: conspiring to possess with the intent to distribute 500 grams or more of methamphetamine mixture (Count 1); possessing with the intent to distribute 536.3 grams or more of methamphetamine (Count 2); and eleven counts of unlawfully using a communication facility in committing Count 1 (Counts 3-13). Sentenced to a total term of imprisonment of 25 years, Defendant appealed his conviction and sentence to the Tenth Circuit, which affirmed both. *United States v. Vazquez-Villa*, 423 Fed. Appx. 812 (10th Cir. May 19, 2011). Vazquez-Villa then timely filed this original motion for relief under 28 U.S.C. § 2255.

Liberally construed, this motion raises four grounds for relief, all based upon the alleged ineffective assistance of defense counsel: 1) failure to establish that the traffic stop lacked probable cause; 2) failure to investigate the fact that no drugs were found in Vazquez-Villa's possession at the time

of the traffic stop; 3) failure to establish lack of valid consent to search his vehicle; and 4) failure to argue for a downward departure at sentencing based on the fact that Vazquez-Villa was to be deported. The government responds that because overwhelming evidence of Vazquez-Villa's guilt was presented at trial, Vazquez-Villa was not prejudiced by any deficient performance by counsel.

**General § 2255 Standards**

A district court may grant relief under § 2255 if it determines "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Defendant contends that his sixth amendment right to the effective assistance of trial counsel has been violated.

**Sixth Amendment Standard**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI; *Kansas v. Ventris*, 556 U.S. 586 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must prove two prongs: first, "that his 'counsel's representation fell below an objective standard of reasonableness,' *Strickland v. Washington*, 466 U.S. 668, 688 (1984)," and second, " 'that there is a reasonable probability that,

2

but for counsel's unprofessional errors, the result of the proceeding would have been different,' *id.* at 694." *United States v. Taylor*, 454 F.3d 1075, 1079 (10th Cir. 2005). "[T]here is no reason for a court deciding an ineffective assistance claim … to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

A court may not find a constitutional deficiency unless defense counsel's performance is "completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999), *cert. denied*, 528 U.S. 1167 (2000). Proof must show the counsel's conduct was not "within the wide range of competence demanded of attorneys in criminal cases." *United States v. Blackwell*, 127 F.3d 947, 955 (10th Cir. 1997) (quotation and citations omitted). A court is highly deferential in its review of the attorney's performance. *Strickland*, 466 U.S. at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689; see *United States v. Holder*, 410 F.3d 651, 654 (10th Cir. 2005). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 281 (1986).

The movant's burden on the second prong, prejudice, is to show that but for counsel's constitutionally ineffective performance there was "a reasonable probability the jury would have had reasonable doubt regarding guilt." *Boyd,* 179 F.3d at 914 (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Prejudice is assessed from reviewing "the totality of the evidence, not just the evidence helpful to" the movant. *Boyd*, 179 F.3d at 914 (citing *Cooks v. Ward*, 165 F.3d 1283, 1293 (10th Cir. 1998), *cert. denied*, 528 U.S. 834 (1999)).

**Statement of Facts**

Because a recitation of many of the incriminating facts presented at trial is unnecessary for purposes of this motion, the Court will set forth only the facts relevant to this motion.

The pertinent facts relating to Defendant's traffic stop and truck search were summarized by the Tenth Circuit on Defendant's direct appeal:

> In February 2009, after intercepting a phone call involving Vazquez–Villa, agents determined he was traveling in Kansas with a shipment of methamphetamine. Upon request from the KBI, local police located and stopped Vazquez–Villa's vehicle and deployed a drug dog, which alerted near the front of the vehicle. An officer searched the vehicle but found nothing illicit and let Vazquez–Villa continue his drive. Shortly after the stop, however, KBI agents intercepted a call in which Vazquez–Villa told Molina, a known drug source, that the police had stopped him. The jury heard testimony regarding the traffic stop and Vazquez–Villa's conversation with Molina. The evidence supported the government's contention that Vazquez–Villa was involved in drug distribution.

*Vazquez-Villa*, 423 Fed. Appx. at 816. The officer's stated reason for stopping Defendant was that Defendant had made a right turn at an intersection without using his turn signal. Dk. 95, p. 119.

**Lack of Probable Cause for Traffic Stop on February 15, 2009**

Defendant first contends that his counsel was ineffective for failing to challenge the legality of his initial traffic stop by filing a motion to suppress. On direct appeal, the Tenth Circuit held that by failing to move to suppress, Defendant waived his right to raise that issue on appeal. *Vazquez-Villa*, 423 Fed. Appx. at 816. The Tenth Circuit noted, however: "Even absent waiver, evidence supported the reasonableness of the traffic stop, and no showing was made that the canine sniff prolonged the stop." *Id.* n. 1.

Defendant contends that his initial traffic stop lacked probable cause. Although no drugs were found in Vazquez-Villa's truck when it was searched, Defendant asserts that some derivative evidence flowed from the illegal stop and should have been suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963). Defendant apparently identified that evidence on direct appeal as: one unspecified telephone conversation between Vazquez-Villa and Molina; and, trial testimony that drugs had been in Vazquez-Villa's truck as recently as one hour before the traffic stop. *Vazquez-Villa*, 423 Fed. Appx. at 816.

To succeed on this claim, Defendant must show a meritorious Fourth Amendment claim, in addition to meeting the two-prong test for a Sixth Amendment violation:

> Where counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

To establish a meritorious claim, Defendant asserts that the initial traffic stop lacked probable cause. Defendant was stopped for not using his right turn signal. Defendant believes no signal was necessary, as he was not making a 90-degree right turn at the intersection. Instead, he contends that he stopped at an intersection, then merely followed the same street he was already on through the intersection, which street was offset and not directly across on from the intersection. But no such evidence was presented at trial, as Defendant did not testify to these or other facts. Further, even assuming such evidence had been presented, the traffic stop would have been reasonable.

"A traffic stop is justified at its inception if an officer has ... reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir.), *cert. denied*, --- U.S. ----, 129 S.Ct. 2881 (2009). "For an officer to have reasonable suspicion to seize an individual,

6

the officer 'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000)). The law does not require the government to show that a traffic violation actually occurred; the stop is legal if the officer had reasonable suspicion to believe a violation had occurred or was occurring. *See United States v. DeGasso*, 369 F.3d 1139 at 1144 (10th Cir. 2004); *see also United States v. Salinas-Cano*, 959 F.2d 861, 865 (10th Cir. 1992).

The governing Kansas statute on the use of turn signals provides in pertinent part:

> (a) No person shall turn a vehicle or move right or left upon a roadway … without giving an appropriate signal in the manner hereinafter provided.
> (b) A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

K.S.A. 8-1548. Nothing in this law requires turn signals to be used only when a vehicle turns at a 90-degree angle. Instead, the statute is broadly drafted, triggering the duty to give an appropriate signal whenever a vehicle turns or moves right or left upon a roadway.

Defendant contends he was not legally required to use a turn signal because of the peculiarities of the street configuration. But Defendant tacitly concedes that he moved his truck right at least somewhat at the intersection without signaling. That act provided an objectively reasonable basis for the officer to stop him for a traffic violation, even if his movement did not

constitute an actual violation of the law. Alternatively, even had Defendant testified to his truck's forward movement, the jury could have credited the officer's testimony that Defendant turned right at the intersection. In either event, the officer credibly testified that he observed what he believed to be a traffic infraction under Kansas law. Dk. 95, p. 134. Given the broad language of the relevant traffic statute, that belief was objectively reasonable. The initial stop of Defendant's truck was thus legal.

Defendant appears to believe that the search was nonetheless illegal because the traffic stop was merely a ruse to further the drug-trafficking investigation. Assuming that the stop was a ruse, the Court finds that fact legally irrelevant. In determining whether a traffic stop is constitutional, the officer's "subjective intent or good faith do[es] not affect the reasonableness of the stop." *United States v. Orduna–Martinez,* 561 F.3d 1134, 1137 (10th Cir. 2009) (citing *Whren v. United States,* 517 U.S. 806, 813 (1996)); *see also United States v. Winder,* 557 F.3d 1129, 1134 (10th Cir. 2009) (noting that "an officer's actual motivations or subjective beliefs and intentions are, quite simply, irrelevant" (internal quotations omitted)). Accordingly, "an officer's motive" will not "invalidate[ ] objectively justifiable behavior under the Fourth Amendment." *Whren,* 517 U.S. at 812.

Of course, a traffic stop does not of itself give probable cause to search the stopped vehicle. More is required, and here, more is shown. During the

traffic stop,[1] the officer walked his drug dog around the truck, and the dog reacted to the front grill area, indicating to the officer that the dog "had smelled an odor of narcotics."  Dk. 95, p. 120, 126. Based on the dog's indication, officers searched the truck, but found nothing. Nonetheless, the dog's indication reasonably led Officer Dougherty to believe that methamphetamine, cocaine, heroin, or marijuana had been in the truck within the past hour. *Id.*

Using a properly certified drug-detection dog, as Officer Dougherty did, is not a search. "A dog sniff of the exterior of a vehicle parked in a public place does not require reasonable suspicion because it is not a Fourth Amendment intrusion. *United States v. Engles*, 481 F.3d 1243, 1245–46 (10th Cir.) (citations omitted), *cert. denied*, 552 U.S. 895 (2007). But a valid alert from a reliable drug dog can, alone, provide probable cause for a search. *See United States v. Klinginsmith*, 25 F.3d 1507, 1510 (10th Cir.), *cert. denied*, 513 U.S. 1059 (1994). Such an alert provides probable cause to search the entire vehicle. *United States v. Williams*, 403 F.3d 1203, 1207 (10th Cir. 2005). Here, the facts show probable cause to search Defendant's truck.

That no drugs were found in the truck does not retroactively dispel the existence of probable cause. "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair

---

[1] No facts at trial suggested that the dog sniff prolonged the traffic stop.

probability that the car contains contraband or evidence." *United States v. Bradford*, 423 F.3d 1149 (10th Cir. 2005), quoting *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998). Hindsight is not employed in determining whether a prior search was made upon probable cause. 2 Wayne R. LaFave, Search and Seizure § 3.2(d), at 47, 50 (4th ed. 2004). "[A]n otherwise valid search is not rendered illegal by the fact that it turns out that the objects sought are not in the place searched." *Id.* Thus probable cause does not dissipate merely because evidence of the suspected criminal activity is not found immediately before or after a search or an arrest. *Cf United States v. Davis*, 197 F.3d 1048, 1052 (10th Cir. 1999) (finding probable cause was not dissipated by the absence of weapons officers expected to find).

Because the search of the truck was legal, this Fourth Amendment claim lacked merit; defense counsel did not act unreasonably in not raising it. Counsel cannot be found ineffective for failing to raise meritless claims. *See United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006); *Martin v. Kaiser,* 907 F.2d 931, 936 (10th Cir. 1990).

**Failure to Investigate Absence of Drugs in Truck**

Defendant next contends that his counsel was ineffective because he failed to investigate or emphasize the fact that no drugs were found in Vazquez-Villa's possession at the time of the February 15th traffic stop. Dk. 146, p. 4.

The record refutes Defendant's specific claim that his counsel failed to investigate or focus on the fact that no drugs were found in his truck during the traffic stop. Defense counsel, during his closing argument, stated that the jury could not convict on mere conjecture or speculation, and that Defendant was never found with "a sliver of ice, of methamphetamine, of cocaine" on him. Dk. 115, p. 164-65. Defense counsel also challenged the alleged infallibility of the drug dog, whose alert was credited by officers although no drugs were found in the truck, and specifically reminded the jury that officers found no methamphetamine in Defendant's truck at the time of the traffic stop. *Id.*, p. 166-67. Counsel challenged the assumptions made by officers and the absence of "hard facts" throughout his closing argument. As noted above, the fact that no drugs were found in Defendant's truck on February 15th is immaterial to the legality of the search. Defendant has failed to show that his counsel's handling of this matter fell below an objective standard of reasonableness.

Defendant's brief generally alleges a host of other issues, grouped under this claim of error, including: that the search warrant for his residence lacked probable cause; that once no drugs were found in the vehicle, or on Defendant's person, the search should have ceased; that hard evidence was lacking; that the investigator's testimony was speculative; that no actual possession of drugs by Defendant was shown; that any drugs found in Defendant's possession were not shown to have been intended for

distribution; and that insufficient evidence supported his convictions. Dk. 146, p. 4-5.

These issues were not raised on direct appeal. *See Vazquez-Villa*, 423 Fed. Appx. 812. "Review under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not." *United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied*, 547 U.S. 1097 (2006). Defendant is precluded from raising these issues "unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Allen,* 16 F.3d 377, 378 (10th Cir. 1994). Defendant has made no such showing.

To the extent Defendant may contend that his counsel was ineffective for failing to raise these issues on direct appeal, Defendant has failed to show that any of these issues was meritorious, as is necessary to show ineffective assistance. *See Orange*, 447 F.3d at 797.

**Failure to show that Vazquez-Villa may not have voluntarily consented to the search of his vehicle.**

Defendant next contends that counsel was ineffective in failing to argue that Defendant's consent, if any, to search his truck was not given voluntarily and knowingly. Defendant contends that because he spoke no English and did not understand the questions asked by officers during the

February traffic stop, he may have consented to the truck search without intending to do so.

The record shows that neither Officer Dougherty nor any other officer requested Defendant's consent to search his truck. Instead, the record shows the following: Officer Dougherty was the sole officer to stop the Defendant; Officer Dougherty had his dog with him at the time of the stop; Officer Dougherty told Defendant during the traffic stop that he was going to walk his dog around the truck; the officer walked his dog around the truck; the dog indicated by the front grill area that he smelled an odor of narcotic; the officer put the dog back in the patrol car; the officer returned to the truck and told Defendant he was going to search the truck. Dk. 95, p. 118-121. Thus, no factual basis for this claim of error has been shown.

Additionally, the Court finds the validity or voluntariness of consent immaterial, because the search was legal even without consent. Consent to search a vehicle is unnecessary where probable cause exists. *United States v. Alcaraz-Arellano,* 441 F.3d 1252, 1261 (10th Cir. 2006). Here, probable cause was created by the dog's indication, as discussed above. Because no consent was necessary, no legal basis for this claim of error has been shown. Counsel's failure to raise this argument, which lacked merit, was reasonable. *See Martin v. Kaiser,* 907 F.2d 931, 936 (10th Cir. 1990) (failure to raise meritless argument cannot constitute ineffective assistance of counsel).

**No Prejudice to Defendant**

Additionally, and as an independent basis for its decision, the Court finds for the reasons stated at length in the Government's brief, Dk. 148, that even assuming deficient performance of counsel, no prejudice to Defendant has been shown. The three claims of error, above, relate to the traffic stop. The testimony relating to the traffic stop was relatively inconsequential, in light of the other evidence of Defendant's guilt. The charge of possession with intent to distribute methamphetamine on June 17, 2009 (Count 2) was not based on the February traffic stop, but on evidence found during the June search, pursuant to warrant, of Defendant's residence and trailer. Similarly, none of the charges of using a communication facility in committing the charged conspiracy (Counts 3-13) arose from the traffic stop; all arose from Defendant's communications after March 29th when agents received a court order permitting them to wiretap Defendant's telephone. Count I alleged a conspiracy from on or about June 15, 2008, to on or about June 17, 2009, on which date Defendant was arrested. The government presented overwhelming evidence of Defendant's guilt on this and on each of the charged Counts, making the testimony about, and flowing from, the traffic stop *de minimus.* Defendant has not met his burden to show that but for counsel's constitutionally ineffective performance there was a reasonable probability the jury would have had reasonable doubt regarding his guilt.

14

**Failure to Argue for a Downward Departure at Sentencing**

Lastly, Defendant contends that his counsel was ineffective at sentencing in failing to argue for a downward departure based on the fact of Vazquez-Villa's future deportation.[2]

The Guidelines' sentencing range for Defendant was life imprisonment. Defendant's counsel filed a sentencing memorandum before Defendant's sentence, stating his position that "a sentence somewhere between 10 and 15 years would be appropriate." Dk. 94, p. 4. As support for that number, counsel specifically referenced the fact of Vazquez-Villa's future deportation:

> At age 45 and a non-resident of this country, with a minimum 10 year sentence as required by statute, the defendant would be at least 53 years old if he was granted all of his good time credit by the time he served that sentence. He would then be deported and have to start his life over in Mexico.

*Id.*

Counsel also noted that the goal of protecting the public from further crimes would be served by a 10-to-15 year sentence, due in part to Vazquez-Villa's future deportation:

> The defendant if given between a 10 and 15 year sentence would serve that sentence. He would be in custody obviously and would not be able to harm the public. He would then be departed (sic) and not be allowed to reenter the United States.

*Id*, p. 5. Counsel thus argued that Defendant's status as a future deportee partially justified a downward variant sentence.

---

[2] Defendant urges reliance on Eighth Circuit cases, which are not binding in this Court.

Additionally, in sentencing the Defendant, this Court relied on the fact that Defendant's future deportation would serve to protect the public. The Court applied a significant downward variance in sentencing Defendant to 25 years on Counts 1 and 2, to run concurrently, and four years custody on each count for Counts 3–13, to run concurrently with Counts 1 and 2. The Court applied a downward variance because the presentence report: failed to account for the defendant's lack of criminal history; put undue weight on drug quantity-driven calculations; and overstated the seriousness of the offense due to the nature of the investigation and due to attenuated links with an independent drug distribution operation. Dk. 104, p. 14. The Court expressly stated that its decision was based in part upon the fact that Vazquez-Villa's deportation would serve to protect the public, as his counsel had argued:

> The defendant is 47 years of age, and after serving 25 years, his advanced age and his deportation to Mexico will offer an effective deterrent and protect the public from ongoing trafficking by this defendant.

*Id.*, p. 15.

The record thus shows that Defendant's counsel successfully argued to this Court that the Guidelines sentence of life imprisonment was not warranted, and that a lesser sentence was justified based partially on the fact that the Defendant faced deportation to Mexico upon completion of his sentence.

16

No deficient performance under *Strickland* has been shown on this or any other issue.

**Evidentiary Hearing**

The court is to hold an evidentiary hearing "unless the [§ 2255] motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *United States v. Galloway*, 56 F.3d 1239, 1240 n. 1 (10th Cir. 1995). Without a colorable showing of entitlement to relief, the district court does not abuse its discretion in denying an evidentiary hearing. *See Hooks v. Workman*, 606 F.3d 715, 731 (10th Cir. 2010). A hearing is unnecessary here, for the record in this case fully confirms the reasons and grounds establishing that the defendant is not entitled to relief on his claims.

**Certificate of Appealability**

As now required by Rule 11 of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such a certificate "may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the applicant to demonstrate that "reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quotations

17

omitted). Because Defendant has not met this standard, the court will not issue a certificate of appealability for any issue addressed in this order.

IT IS THEREFORE ORDERED that Defendant's motion for relief under 28 U.S.C. § 2255 is denied;

IT IS FURTHER ORDERED that a certificate of appealability is denied.

Dated this 27th day of April, 2012 at Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge